When you're ready May it please the court My name is Michelle King. I'm a certified law student Representative from the University of St. Thomas and along with my colleague Joy Nissen and our supervising attorney Gregory Sisk We represent the appellant mr. Scott Nordstrom. I will watch my own time. However, I would like to reserve seven minutes seven And would your coat your co-counsel is going to take that time yes, okay Thank you During the direct appeal of his capital sentence. Mr. Nordstrom wrote a letter to the attorney appointed by the court to assist him And he gave that letter and closed it in unsealed envelope Clearly marked as legal mail and properly addressed to his attorney to a corrections officer who removed the letter from the envelope and proceeded to read it Today we ask this court to join the many circuits that have held that a prisoner indeed has a First Amendment free speech right To confidentiality and outgoing legal mail to his attorney In Lemon versus Duggar the 11th Circuit stated it is a violation of an inmate's constitutional rights For the prison officials to read legal mail and in Jones versus Brown the Third Circuit clearly explained what it is that that violation exactly is under the First Amendment and That while Jones Jones versus Brown did did address just the risk of reading Jones versus Brown stated that a state pattern or practice or Explicit policy of opening legal mail outside the presence of the inmate interferes with protected communications Stripping them of their confidentiality and it accordingly impinges upon the inmates right to freedom of speech What can the state do in your view? in the presence of the writer Prisoner to make sure that there's not bad stuff in there Well, your honor, mr. Nordstrom does not object to an inspection for contraband Opening up the letter as as he did he presented the letter to the corrections officer and unsealed this fine as well And and to leaf through the document itself is fine So if he's sending Physical material out of the jail. I'm not quite sure usually you're more worried about You know Hacksaw's coming into the jail instead of Hacksaw's leaving the jail, but if there's obviously just sort of shaking it and so on old Probably figure out whether you've got stuff in there. But what happens if the letter? well sent to the lawyer contains in the writing of it a Plot to do something that is clearly illegal Well, is that is the jail disabled from reading that Certainly not if the jail has some type of individualized suspicion probable cause to suspect that an inmate is indeed in collusion with their attorney and and Plotting something along those lines now several cases have stated That that is that is speculative though It's a very remote possibility and in our situation The state of Arizona has had does not have such such reasonable or probable cause or some type of suspicion They've they've offered nothing to them. It would have to be particular to him Well, yes, Your Honor. I mean, I should clarify that. Mr. Nordstrom is seeking an injunction for himself He is not representing a class of inmates What what if what if mr Nordstrom had sent a letter and it didn't say legal mail on the outside could the jail read it going out? Yes, Your Honor, certainly Okay, so how are they supposed to know that when he wrote legal mail on the outside that it actually is legal mail? Well, first of all, it's my understanding that the state of Arizona allows inmates to send out ten letters each month or they have they are given ten envelopes or have the Opportunity to use ten envelopes that are stamped legal mail. They they receive those from the prison itself So they're limited there. They cannot just take an ordinary envelope and write on it legal. Okay. Okay, so they get there You get the ten letters, but how does the how does the jail know that the contents are? Actually for a lawyer and relate to a legal matter as opposed to something that says Dear lawyer, please give this to My my my friends right and then it's got instructions on a jailbreak So, how do how does how does the jail prevent that kind of a thing if you told me that absolutely they can read the mail If it's not legal mail, how does how does the jail verify that when they've taken an envelope that says legal mail? But it's actually legal mail inside. Well, you're speaking of the two, you know one half of the equation essentially Yes, the prison has an in has an interest in preventing exactly that from happening, but we must consider that Against the inmates First amendment rights to free speech and the confidentiality of that communication with his attorney So yes, the in the the prison has an interest in that I would really certainly hope that that there aren't that many attorneys that would participate in that type of a scheme And and in certainly mr. Nordstrom's case. He truly just wanted to communicate freely and openly Sure, but the fact that he just wanted to communicate freely and openly with his attorney It's is is not going to be shared by those who are responsible for checking the mail So, how does the how does the how do we balance his interests against the interests of the jail? If they have to take his word for it that when he says I'm sending legal mail that he's actually sending legal mail Well The Supreme Court has already said when it's out cold outgoing mail That the prison security their interest in in that mail that the concerns related to security Is a categorically lesser magnitude than that with incoming mail and so the court should look to Procunior versus Martinez which was cited by Thornburg versus Abbott and the controlling law therefore is that a prison regulation of outgoing mail and notably Procunior just was discussing any outgoing mail not legal mail as we have here But then in the case here in front of us was this particular piece of outgoing legal mail? Addressed to one of his counsel of record Yes, your honor and did the jail or prison have that name available to it that this was his counsel of record I I do not believe that the state of Arizona as some states do Require that an inmate register their attorney with them. Mr. Nordstrom would have no problem if that was going to be the case But I do believe that it is in the record that that they were But they were aware that he was represented He was in the middle of his direct appeal of his capital sentence and again, it was clearly marked I believe her name was Sharmilla Roy Esquire at the end and again, it was in an appropriate and there's no dispute that in fact I guess I can ask the state when it stands up But there's no dispute that this in fact was addressed to his counsel for purposes of this capital appeal That is my understanding. You're correct your honor Counsel, you're making a First Amendment argument only pressed your First Amendment argument on here at oral argument But you've got you've got other rights that appear to be a better fit here access to courts and particularly the attorney-client privilege Both of those rights require proof of actual injury But your First Amendment right you claim does not is that is that does is that the strategy? There's that you can't win this case if you have to show actual injury No, your honor We just believe that the First Amendment argument is the most streamlined and precedent have it's the most but it's the most general of those arguments the others seem to be far more sort of Narrowed that is a right of counsel and a right of access to courts seem to be far more narrowed than a broad Amorphous First Amendment right to speak to one's attorney Well both the Third Circuit and the Eleventh Circuit the third and Jones versus Brown in the 11th and Alameen versus Smith have used the First Amendment for that and there are other courts that have doubted that the seventh probably that is correct But there are they're all legal vehicles to the same outcome But to address well, not necessarily because you have you if you have to go to the others You have an additional proof you have an additional burden that you don't have with the First Amendment Your honor. I am happy to answer that question. I would like to note though. I am running out of time Let's do this we'll ask you questions as long as we want and you can answer them as you think appropriate and We will save seven minutes for your co-counsel. So don't don't be too nervous about this. Thank you very much and for those young people here in the audience You should know that Panels vary in how hard nose they are about time So don't take this necessarily of what's going to happen with the next panel with another set of judges, but that's what we're gonna do Thank you. Now. I've got a variation on Judge Biby's question, which is Well, let's assume for a moment that we are talking either attorney-client privilege or access to court and you're seeking an injunction against reading Of mail to his counsel of record in this capital appeal or a later on a habeas What kind of injury would you have to show and what kind of injury would you try to show Well, your honor Okay, first of all because this he is seeking injunctive relief This court held in Armstrong versus Davis that to be entitled to such relief The inmate need only show that he is realistically threatened by repetition of that experience. Of course, there are two Avenues to show that one is that there's a policy and that the There was a policy by the prison and that the injury stemmed from that or that there's a pattern of officially sanctioned behavior and so When there is a policy what Armstrong stated was that if it is directly the harm is directly traceable to that policy There's an implicit likelihood of its repetition in the immediate future. And so if the behavior is repeated, what's the harm? The harm is the chilling of the communication between the inmate and the attorney the invasion that deliberate intrusion into the Confidentiality, but you're arguing them in terms of chilling effect that the inmate Might not write certain things if he was concerned that the guards were going to read it Exactly, your honor and how strong do we have to have that inference? I understand the might part Does it have to be probably I mean, how do we I can have some instincts about this But it's hard for me to arrive at a very concrete notion of how much chilling might take place Well, I guess in part your honor that would depend on the inmate perhaps But but here he has directly alleged that he self-censored his communications at a critically important time of his direct appeal But if he's just he's just alleging chilling That's that's all you have to show under the we assume that under the First Amendment and if that's all the injury you have to show in order to prove injury under the Under your sixth amendment rights your 14th amendment rights, then that's really no burden at all Well, your honor. Yes, but but the other thing to note is well several things here First of all, this this case was dismissed at the pleadings And mr. Mr. Nordstrom has not had the opportunity for discovery or to prevent any to present any more evidence And and also noting that because he was a pro se inmate His his complaint does need to be Delivered to the alleged that the state did anything with the information I got the office did the officer do anything with the with the information that he that he gleaned from this letter? Again, going back to my previous response. We really truly do not know. Okay, but he didn't allege anything He did not know what he was concerned with and what he alleged again was that chilling effect that he experienced that he he self-censored his communications and And the other thing I would like to point as well Is that going back to the the injury requirement under the assistance of counsel typically, of course, that is the Strickland prejudice test and I am aware of the holdings of this court in Danielson USP Danielson following Weatherford v. Bussey, but notably those are Retrospective Backward looking cases what we have here with mr. Nordstrom again. He's seeking prospective relief We believe that that rather than Using the standards that have been applied or set in those cases that it is more appropriate to look to lucky versus Harris an 11th Circuit decision and Benjamin versus Frazier a Second Circuit decision and that is this is that in an ongoing Proceeding the right of an accused to assistance of counsel is provided directly by the Constitution and an inmate does not need to assert a Denial of that right That that has resulted in actual injury and it's a very considerable difference. I think factually our case what it represents here In contrast to the others, but I don't hear from the other side and then your co-counsel will have some time Good morning, your honors. May it please the court. My name is Neil saying I'm an assistant attorney general and I represent the state of Arizona Which is an amicus curiae in this case Yeah, because you didn't appear at all below, correct? That's right I mean we were given the option of either appearing or not appearing made a judgment call We didn't we weren't given an opportunity to make a judgment call  We were given the option of either appearing or not appearing Responds before the district court. So Your honor, I I guess one of the challenges we have in this case. Is that The the gist of the opening brief filed by Mr. Norton's counsel focused on the Sixth Amendment Now hearing that perhaps their primary argument is the first one Issue the free speech issue and I think the problem the flaw with their argument if it's going to rely on the free speech Issue is that the one case that they primarily I think they rely upon is a Third Circuit decision Jones versus Brown and That was a case Which is like many of the other cases decided on this issue in in all the circuits almost all the circuits where? The state specifically sought to open legal mail Outside of the inmates presence. This is a New Jersey decision New Jersey officials reacting right after 9-11 Let me see if we can narrow what we've got here in front of us. Are you contending? Let's assume that the allegations are true Obviously, they may or may not turn out to be that way, but the allegation is that he had an envelope legal mail addressed to someone Esquire who was in fact his lawyer for purposes of the capital appeal And if the guard didn't know that that was actually his lawyer He could have found that out the guard takes out the letter and reads it. That's that's the allegation Are you saying that the prison in the circumstance here without any prior? Indication that he's trying to accomplish something nefarious by sending it to his lawyer who will then pass it on to some Are you saying that the prison guard has the right to read that legal mail I Would say that the prison guard does not have the right to read the legal mail I would say that the prison guard has the right to do what what the policy says Which is to read it to the extent to make sure that it's contraband No more now does the policy say read or scan or what? What's the word in the policy and perhaps this is where? this confusion lies the policy first says that There is no reading the prison guards cannot read the mail And it's a flat prohibition. There shall be no reading the policy then states that reading is permitted to the extent To establish that the letter is not contraband and it shows the word reading But what would it what would it have to be to be contraband for a letter to be contraband a letter can be contraband? If it contains for example Instructions for the recipient to get in touch with somebody it contains an address it contains telephone numbers If it contains bank account information or somebody social security number Those are all ways that a letter itself can come can constitute, but you know, I'm a guard and I'm Not only authorized to but it's part of my job to read insofar as necessary to determine whether it the letter Contains these forbidden things. I think I have to read every word. I mean, you know, it could be in the last paragraph So I know I Think your understanding of the policy as you've described it to me requires the guard to read every word. Isn't that right? Well, I think what happened here but we're talking about our you know a matter of Seconds your honor the 15 seconds slightly longer than it took me to just introduce myself to this court a very short amount of time No, no, I understand that but I'm asking you now about what you think the policy requires Well, the policy requires a skimming. I think that throughout But then I think you said it requires a reading insofar as necessary to determine that there's no contraband in the letter in the text Of the letter. Did you say that? Yes, I did. So and if something in there qualifies as contraband in the sense that we're talking about is Contact Joe who will tell you where to get the count number for the stolen money that you can then use to pay yourself Let's assume that's contraband that could be in the last paragraph So, how does the job that the deputy do his job under this reading? Without reading the entire letter that the correctional officer is has to take the two provisions at issue and What the letter is saying What it's talking about? Well, in other words that the the guard will not be able to determine whether or not there are forbidden things in the letter Well, Your Honor, it is an imperfect situation Well, I'm trying to understand what it is and I'm having trouble because I think I'm hearing two things at once But well, like I said, Your Honor, it is it is a difficult and imperfect situation You know, there's no other way that I can think of and certainly no other way the Supreme Court could think of To balance the interests at issue here. We do have competing interests We do have the prisoners right to communicate with his attorney we also have the demonstrated interest of prisons to ensure security and That's why the Supreme Court came up with a with a procedure that I think has worked largely well since 1974 from the Wolfe versus McDonald case that it's an imperfect situation But if you're reading the letter in the inmates presence, then that itself ensures A whole variety. Okay, but you just used the word reading So I and I think I'm in I mean, I'm trying to figure out not only what the policy is But what your position is is your position that the guard has the right? To read the entire text of the letter to determine whether there's something in it that is forbidden No, I would say the guard does not have the right to to read line by line the entire text of the letter I would say the guard has the right to skim the letter Look for buzzwords that guards are trained to look for look for something that that stands out and that's about it And your honor I would I would point in this regard, you know Use the term inspection and perusal and I think the exact quote was freedom from Censorship does not mean freedom from inspection and perusal. It's curious It's curious that you'd use that because the in the policy. I'm looking at 902 0.11 and I'm looking at one point four point two point one It's talking about incoming mail May be scanned but it shall not be read or censored But the word scan doesn't appear in one point four point two point two, which is the which is the outgoing legal mail it says they shall not be read or censored, but shall be inspected and then it says it are not prohibited from reading and if that if that word said scanned or Inspected or perused or something less than reading The state would probably have a much stronger case. It's very difficult when you use the same word You shall not read but you may read it's well You're right I mean, I think it would probably be clearer but I think the thrust and the gist of these words all these words read skim scan peruse inspect They all mean the same or similar things to a prison guard the guards and the officers know They are not to read the letter for the sake of reading the letter. They are to inspect They are to check they are to quickly scan to the extent only to the extent necessary to establish That the letter is not itself contraband What do you do with the hypothetical which is not I think our case here But it raised in one of the amicus briefs where the legal mail was alleging or was describing Very bad behavior by the guards and if the guard is allowed even to skim it The inmates are going to be at least they fear and big trouble from the guards How do you deal with that case? Well, I understand that's not the case we have here in front Sure, I think that's the reason why the wolf procedure works Inmate writes accusations against prison guard to his attorney wants to report this conduct to an attorney Let's say that the guard reads it right in the inmates presence So now the the inmate knows that he read it in his presence and let's say or even skimmed it or skimmed it Yeah, I'm gonna say, you know Deputy so-and-so beat the daylights out of inmate so-and-so sure so I think that the the reason the procedure works is The letter goes to the goes to the attorney or let's say that it doesn't go to the attorney The inmates going to find out one way or another that hey, I wrote a letter to my attorney. I never heard anything But that's not what the attorney that the inmates worried about what the inmates worried about is as soon as he makes an accusation Against the guard that so-and-so beat so-and-so that the inmate is going to get punished in a whole variety of ways Well, that's not unrealistic in some circumstances and if that's if that's taking place your honor I think that that's the purpose for giving the inmate access to the courts if that is taking place if a guard is Reading the letter and retaliating against the prisoner because of his reading that letter That's a much better case. We yeah, but that's after the fact after the inmate is, you know I've been very severely beaten by the guard. Hey, thanks a lot Sure I mean so if I'm an inmate and The guards are misbehaving terribly and I want to report that to my lawyer and I know that the guard is going to read it Before it gets to my lawyer and I want to avoid being severely punished by the guard. I don't write it Well, you know the inmate also has the ability to call his attorney if he's if he is that concerned that The very prison guard he is complaining about has the ability to read his letter in his presence there are other ways to contact his attorney which By the way is a method of communication that has been recognized by other circuits as being a legitimate reason why? And that may be a sufficient answer for some of these I'm worried about the guards finding out about my reporting on it Probably is not a sufficient answer if we're talking about the sort of communication it may be an issue here either on direct appeal or particularly on habeas for if you have a it's a capital case with penalty phase at issue and It's hard to report that over the telephone when what he's going to say is three pages worth of terrible abuse He suffered as a child I mean, I think we can all assume that some of those things are not very well done by telephone that they're better done by mail If We were to say that we're looking at either access to courts or attorney-client privilege and We're looking at an injunction suit where the injunction sought is don't read my mail beyond a quick skim or whatever That's going to be What form of harm do we need to show to support such an injunction? The Harm needs to be some tangible impact on the actual relationship between Prisoner and his attorney that is preventing His access to the courts. I mean the Sixth Amendment is about the effective assistance of counsel during criminal proceedings and There has been not even an allegation despite giving being given two opportunities that the lower court dismissed Citing the lack of actual injury and then gave mr. Norson 30 more days to amend his complaint and he did amend his complaint no factual allegations It's not an abstract legal concept, which he would require it an attorney for Absolutely, no Allegation that his appellate proceeding before the Arizona Supreme Court was impacted in any way Was there was there a critical mitigating fact about his personal life that needed to be communicated to his attorney? This does he allege that there's certain things. He's impeded or discouraged from saying Given the knowledge that the guard is going to read the letter only in a very general sense He says that his communication his ability to communicate has been chilled very general Nothing specific. It's not even the case that he said that there is something specific But I don't want to say it in a public court document. He doesn't even say that He simply has this general allegation that his communications with his attorney have been chill Yeah, it's a pretty high hurdle at this point for a lay person to say. Well, I didn't say X And because I didn't say X I suffered the following adverse legal consequence Well, you know, I don't know your honor that It's a factual allegation Did something happen did does his attorney not receive a communication that he really needed her to receive? That would make some sort of a difference before the Arizona Supreme Court But we all know and I'll even take this outside of the prison context lay people coming into a lawyer They'll you know, they'll tell a story for an hour and the lawyer will pick out of that story things that are legally relevant that the person telling the story might have not attached great importance to and The things that the person telling the story attached great importance to are quite irrelevant legally. I mean, it's very hard for the non Legally trained person to sort this out. It can be hard your honor. I would say that it's The court is really going to have to try and speculate on mr. Norton's behalf in order to reach that conclusion. It just seems like this is not an abstract legal or a complex factual point did something happen did something bad happen to you because You were afraid to write letters to your attorney because of this one incident Oh, you're afraid to say some things in letters that you do, right? And of course, we don't have any allegations that that officer Hawthorne Retaliated that he ever did this on a repetitive basis or anything else. Okay. My time is up your honor. Thank you Thank you I Think it was seven minutes May it please the court. My name is Joy Nissen and I'm also representing the appellant. Mr. Scott Nordstrom Your honors Wolf versus McDonald does not state that reading in the presence or reading at all is permissible under the Constitution What Wolf stated was that a policy requiring opening legal mail in the presence of the prisoner Ensured the prophylactic purpose Of ensuring that the mail would not be read at the time that the policy in question came before the court in Wolf Reading was off the table the prison policy that had originally allowed reading The prison was no longer asserting that they had the right to apply that policy So the issue was how best to protect the confidentiality of attorney-client communications And the court came down with the opening in the presence But at no time has the Supreme Court courts if the court's concern in Wolf was with the confidentiality of attorney-client privileges But you have shifted your argument from attorney-client to First Amendment in order to avoid the question of harm Isn't there a danger here that the First Amendment will subsume the Sixth Amendment? That is that the question of attorney-client privilege will become irrelevant because we'll have a much broader right with a much lesser burden of proof Under the First Amendment In which case Wolf becomes irrelevant Your honor whether the court chooses to apply the First Amendment argument or the Sixth Amendment argument again We assert that there are legal vehicles to the same end with respect to the Sixth Amendment Maybe but they're different they're different burdens on on your client. They may be your honor However, if this court follows the approach of the Second Circuit In Benjamin versus Frazier and then also in Luckey versus Harris the Seventh Circuit or not Seventh Circuit Fifth Circuit case the Requirement of showing ongoing actual injury does not apply to an ongoing proceeding in Benjamin versus Frazier The court held that the plaintiff prisoners were entitled to injunct a relief when they showed that city jail regulations Resulted in substantial and unpredictable Are you contained the regulations are infirm here or the actions that were used against your client? That's another important thing to clarify your honor the policy that mr Nordstrom is seeking an injunction injunction against is located on page 93 of the record where after four stages of the grievance process, mr. Nordstrom's Complaint about having officer Hoffman read his legal mail the director's office Noted that officer Hoffman was simply following policy And that staff is not prohibited from reading to ensure that the content of the mail is of legal subject matter So this is the policy that Nordstrom is seeking to enjoin as applied to himself, but but the but the jail Officers would be entitled to verify that it was in fact legal mail The officers are entitled Under our claim to verify that it is legal mail in a number of ways as long as it does not intrude upon the actual substance of The legal mail for example verifying the outside of the envelope that it's being sent to an attorney Requiring the prisoner to submit what if what if the letter what if the letter? contained Things that were clearly relevant to ongoing legal proceedings of that before the Arizona Supreme Court So there was no question about that But there was this sort of PS that judge Fletcher described that says if you want to get if you want to get paid You know the money's buried in a box here Now that would be sort of a mixed a mixed problem wouldn't it because that would be contraband under the state's definition But everything else would clearly be legal mail. So can the state guard against that by by looking through the letter? your honor the court Supreme Court of Kenya noted that The situation such as that to which you're referring is speculative. And so when we have all it is speculative But I need to know the answer I Realize it's not your case, but I I need to know I need I need to be able to think through What we're going to do here If the prison had some kind of individualized suspicion, but there was non-legal contour. Why does it have to have individualized suspicion? I'm sorry. Why does it have to have individualized suspicion in order to protect the First Amendment freedoms? The Supreme Court noted in pecuniary that with outgoing legal mail, which is again in the category Categorically lesser risk the prison system the regulation or the interest of the government must be important Or substantial and the limitation on First Amendment freedoms must be no more than necessary or essential to the protection of that interest How broad is the interest of the prison? In preventing I'll call it generically bad communications. I'm thinking for example of my hypothetical that Judge Vibey's My thing described better. Here's the money. It's in the box. Da da da da da or other communication that says on April 13th Here's what we're going to do to break out of jail in the first example It seems to me there's nothing in that communication, even though it's encouraging or facilitating illegal behavior That threatens the security of the prison in the second example What we've got there very much threatens the security of the prison does the prison have an interest for purposes of inspecting mail against generally generally illegal behavior Or is their interest confined to things that affect the security of the prison? The Department of Corrections of Arizona has a definition of contraband in its regulations It's not specifically it within the legal mail Context but the definition describes only items that are of risk to the prison system. It doesn't describe content so But also in response to your question the Lynn Stewart case in which Ms. Stewart was a criminal confederate of her client And that was the client was in the Federal Bureau of Prisons These were in-person meetings with her client not mail or phone meetings And in that case the individualized suspicion probable cause system works. They were able to To pick up on what was going on and even after that point the Federal Bureau of Prisons allows prisoners to send out sealed outgoing legal mail, so the Even despite this this happening the Federal Bureau of Prisons noted again category the lesser magnitude of risk With respect to outgoing legal mail despite this this singular incident And again the state of Arizona states that The to show a harm we must show a tangible impact on the attorney-client relationship now Nordstrom said he's that he Self-censored his communication and that he was kept from sharing critically sensitive information And it's important your honors that this complaint was dismissed at the screening stage Before he had the chance to present evidence of ongoing harm with respect to the chilling but also with respect to the ethical dilemma in which the threat of reading places upon the attorney representing their client and Again, mr. Nordstrom is on death row in this type of case anything that he might have to say to his attorney on appeal from The death sentence can go to a mitigating factor Could could impact his case. Okay. Thank you for your time. Thank you very much Thank both sides for their arguments and before we take a break. I want to say on behalf of the court Thank you to the law students of the University of St. Thomas Again as earlier this morning We're not in any way signaling how we think the case ought to come out But we would like to thank these law students for a very good job The case of Nordstrom is now submitted for decision
judges: Silverman, Fletcher, Bybee